Billings, Thomas P., J.
For the following reasons, defendant Southbridge Group’s Motion for Summary Judgment is ALLOWED.
If the plaintiff had a claim against Southbridge, it would be on the theory of defacto merger.[1]
The factors that courts generally consider in determining whether to characterize an asset sale as a defacto merger are whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. No single factor is necessary or sufficient to establish a defacto merger.
Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359-60, 676 N.E.2d 815 (1997) (citations omitted).
The plaintiffs best evidence on this point comes from Southbridge’s announcement, reproduced on its website, of the acquisition of the assets of two facilities formerly owned by Siematic (Canada) Limited Partnership. This was the company alleged to have manufactured the kitchen cabinets that the plaintiff purchased and which she alleges are the source of the formaldehyde which she alleges has made her ill.
Although we are assured by Southbridge’s papers that it is more complicated than this, its statements on the website would warrant findings that on June 16, 2005, Southbridge “purchased the assets of the Kitchener and St. Catherines facilities” of Siematic Canada; that it “will be returning both plants to full operation immediately” under the name of Beckerman Kitchens; and that it would be assisted in this endeavor by “key members of the former Siematic (Canada) management team and workforce.”
Still, it is not enough. At most, these statements would support findings in the plaintiffs favor on the first and third factors identified in the Cargill case. There is no evidence that Southbridge paid for any part of the purchase with its own stock (one of the hallmarks of a “real” merger), or that it has assumed or *313 paid any of the obligations of Siematic Canada. Unlike the transaction examined in Cargill, moreover, Southbridge here did not “hold itself out to the world as the same enterprise” as Siematic Canada, see 424 Mass. at 362, but rather notified the world promptly of the change of ownership.
Finally, the fact that the sale was effected by Siematic Canada’s receiver, not by its principals, minimizes both the resemblance to a merger and the likelihood of unfairness to creditors of the discontinued enterprise — beyond, of course, the unfairness to legitimate creditors that is inherent in any insolvency. A contrary result on these facts, obviating the possibility of a “clean” asset sale, would upset the reasonable expectations of all concerned and would, in the long run, work to the disadvantage of creditors of distressed enterprises, by depressing the price that arms-length purchasers would be willing to pay the receiver for the company’s assets.
Taking the facts in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, there was no de facto merger. Southbridge is therefore entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, defendant Southbridge Group’s Motion for Summary Judgment is ALLOWED. An interlocutory judgment is to enter, dismissing all counts against Southbridge only.

 note that both sides have treated the issue as one of Massachusetts, not Canadian, law, and I therefore treat it this way as well.